John Wayne BURNS, Appellant,

v.

The STATE of Texas, Appellee.

No. 44182.

Court of Criminal Appeals of Texas.

June 14, 1971.

Rehearing Denied Nov. 22, 1972.

John W. O'Dowd, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Donald M. Keith, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for murder; the punishment, life imprisonment.

One of the appellant's contentions is that his oral confession was erroneously admitted into evidence because the requirements of the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were not met.

The appellant's confession was made on January 29, 1966, approximately five months before the Supreme Court of the United States delivered its opinion in *Miranda* on June 13, 1966. The requirements of *Miranda* had not then been articulated and were not known to the officers investi-

gating this murder. In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966), the Supreme Court of the United States did not give full retroactive effect to *Miranda,* but did make its requirements applicable to all confessions offered in evidence in trials commenced after June 13, 1966.[1]

The trial in this case commenced June 19, 1967. Therefore, the *Miranda* standards were applicable to the appellant's confession.[2]

■ Before examining the facts to determine whether or not it was error to admit the oral confession in this case, we consider the State's contention. The State's argument is that we cannot consider this ground of error on appeal because the appellant's objection to the admission of the oral confession at the time of trial was not sufficient. It is asserted that the objections made at the trial were not made with the same particularity as those now urged in the appellant's brief on appeal. It is true that the grounds of error are stated with much greater particularity in the appellant's brief on appeal than they were when made at the time of trial. It is also true, however, that the appellant's counsel objected at length and on the grounds that the oral confession was obtained in violation of the appellant's constitutional rights. We deem the objection made at time of trial to be sufficient to raise this ground of error and to require its review on appeal.

■ Three investigating officers, having good reason to believe that the appellant committed the offense, went to the appellant's home in the evening. Soon after they arrived appellant drove up and parked in the garage. The officers met him, introduced themselves and told him he was under arrest. They then took him over to their automobile where they sat and talked. The officers testified that the appellant was told "that he did not have to answer any questions, that he could remain silent; that he had a right to have a lawyer; and that any statement made by him could be used against him . . . he did not have to make any statement at all and if he did it could be used against him."

The officers then interrogated the appellant concerning the offense. The appellant told the officers "that he rolled a man for his money; that he gave half the money to Jimmy Bates, and that he thought the man was a queer." Soon, the appellant's father came out to the officers' automobile and the appellant again repeated his statement in greater detail in his father's presence. The appellant said he met Cooper, the victim of the crime, in a beer joint. When it was closed, Cooper asked appellant to take him home. They rode around for a while, and the appellant drove to the home of Jimmy Bates, where he went in and borrowed a hammer in order "to roll" Cooper. He then took Cooper to the place where Cooper was later found, beat him with the hammer, took his wallet and money, and went back to Bates' house and divided the money with Bates.

After the confession had been made in the officers' automobile, they took appellant to the office of a Justice of the Peace, obtained an affidavit and a warrant and then went to the home of the Justice of the Peace. The Justice of the Peace advised

---

1. The Supreme Court of the United States granted the petition for writ of certiorari in Pennsylvania v. Ware, 405 U.S. 987, 92 S.Ct. 1254, 31 L.Ed.2d 453 (1972). Any belief that the Court intended changing its holding in Johnson v. New Jersey, *supra,* regarding the retroactive application of *Miranda* was dispelled when the order granting the petition for writ of certiorari was vacated and denied a month later on April 24, 1972. 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821. See opinion of the Supreme Court of Pennsylvania in Commonwealth v. Ware, 446 Pa. 52, 284 A.2d 700 (1971).

2. An oral confession must meet the requirements of Article 38.22, V.A.C.C.P., as well as Miranda v. Arizona, *supra.* See Lee v. State, 428 S.W.2d 328 (Tex. Cr.App. 1968) and Fields v. State, 468 S.W.2d 71 (Tex.Cr.App. 1971).

the appellant "that he did not have to make any statement at all, and if he did it could be used against him and probably would; that he had a right to a lawyer and that if he couldn't obtain a lawyer, one would be appointed for him and he told him he could remain silent; and that he had the right to an examining trial."

The Justice of the Peace stated he knew the appellant's father and told appellant before leaving his house he could call a lawyer; the appellant said, "No, that he didn't need a lawyer."[3]

The officers were then directed by the appellant to the scene of the robbery and murder and he told the officers where the hammer handle had been thrown by him. It was later recovered in the area indicated by the appellant.

The officers then drove to Bates' house and the appellant told them that he had taken the wallet and the hammer head there when he split the money with Bates.

At Bates' house the appellant directed the officers to a spot where the burned remains of the wallet were found. There was a "Sacred Heart Medal, religious type medal" which had belonged to Cooper found with the remains of the wallet.

The patient trial judge held a time-consuming and exhaustive hearing out of the presence of the jury prior to admitting the oral confession into evidence. In compliance with the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964), the trial court made and incorporated into the record his findings following that hearing, which were as follows:

"At the conclusion of the hearing on the voluntariness of the confession in this cause, No. 119495 the court finds that an oral confession leading to the recovery of some of the property or the weapon with which the crime was committed was made after the defendant was advised of his right to remain silent and of his right to know that any statement that he gave could be used against him on the trial of the matter for which the had been arrested and about which he was being interrogated that the defendant knowingly answered questions in that respect, intelligently and voluntarily, that he was informed of his right to counsel and that he did not expressly waive the right to counsel but by conduct he did so and the court will admit the evidence heard in the absence of the jury under proper instructions to the jury to determine for themselves the voluntariness of the alleged oral confession."

The appellant was not advised of his constitutional rights by the standards required in Miranda v. Arizona, *supra.*

In the *Miranda* opinion, the Supreme Court said:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, *and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.* After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and

3. Later, the appellant refused to make a written statement without consulting a lawyer.

agree to answer questions or make a statement. *But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.*" (Emphasis supplied.) 384 U.S. at 478, 479, 86 S.Ct. at 1630.

It was further stated:

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer *and to have the lawyer with him during interrogation* under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, *this warning is an absolute prerequisite to interrogation.* No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right." (Emphasis supplied.) 384 U.S. at 471–472, 86 S.Ct. at 1626.

The appellant was not advised, prior to being interrogated, that if he could not afford an attorney he had the right to have an attorney appointed for him; to the contrary, Officer Cleboski testified that he "did not advise him that he could have a free, appointed lawyer, but that he had a right to have a lawyer." Further, the appellant was not sufficiently advised that he had the right to the presence of an attorney during any interrogation. United States v. Fox, 403 F.2d 97 (2d Cir. 1968); Lathers v. United States, 396 F.2d 524 (5th Cir. 1968); Montoya v. United States, 392 F.2d 731 (5th Cir. 1968) and Windsor v. United States, 389 F.2d 530 (5th Cir. 1968).

The subsequent warning given appellant by the Justice of the Peace came too late and it was not sufficient.[4] The record reflects that appellant was neither advised that he had the right to consult with an attorney before any questioning nor that he had the right to have counsel present with him during questioning. It being "an absolute prerequisite to interrogation" that an individual held for questioning be so advised, such warning cannot be dispensed with.

Because of the admission into evidence of the oral confession, not meeting the standards set by the Supreme Court of the United States in *Miranda* to insure compliance with his constitutional rights, the judgment is reversed and the cause remanded.[5]

Opinion approved by the Court.

---

4. It is noted that while the lack of a proper warning before an individual's first in-custody statement is made does not necessarily render inadmissible those statements made during interrogation after the accused has been properly advised of his constitutional rights, it may do so. See Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Gilpin v. United States, 415 F.2d 638 (5th Cir. 1969).

5. The appellant's complaint that the State was improperly permitted to impeach its own witness Bates also appears to have merit.